

**SIGNED this 21st day of July, 2011**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| In re: | No. 09-16965 |
| | Chapter 7 Debtor |
| MAGELLAN SOLUTIONS, LLC, | |
|     Debtor; | |
| | |
| JERROLD D. FARINASH, TRUSTEE, | |
|     Plaintiff, | |
| v | Adversary Proceeding |
| | No. 10-01293 |
| O2HR, LLC, | |
|     Defendant. | |

**Memorandum**

Plaintiff Jerrold D. Farinash, Trustee ("Trustee"), brings this action against Defendant O2HR, LLC ("Defendant" or "O2HR") pursuant to 11 U.S.C. §§ 544(b), 547, 548, and 550(a) to avoid certain transfers made by the Debtor Magellan Solutions, LLC (the "Debtor" or "Magellan").  The Plaintiff now moves for summary judgment on his 11 U.S.C. § 548 claim. [Doc. No. 19].[1]  The Defendant opposes the motion for summary judgment.  [Doc. No. 26].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

**I.   Background**

The court must view the facts in the light most favorable to the Defendant for purposes of the motion for summary judgment.  The parties agree on several of the material issues of fact in this case.  However, they dispute two key material issues.

An involuntary Chapter 7 petition in bankruptcy was filed against the Debtor on October 27, 2009.  *See* [Bankr. Case No. 09-16965, Doc. No. 1].  The order for relief was entered in the main bankruptcy case on December 10, 2009.  [Bankr. Case No. 09-16965, Doc. No. 9].  The United States Trustee appointed Jerrold Farinash Trustee in this matter on December 11, 2009. [Bankr. Case No. 09-16965, Doc. No. 10].

The Trustee contends that on August 11, 2009, the Debtor transferred $273,486.22 to the Defendant.  [Doc. No. 21, Affidavit of Jerrold D. Farinash, Trustee ("Farinash Aff."), ¶ 3].  For purposes of this summary judgment motion, the Defendant does not contest this fact.  *See* [Doc. No. 28, Defendant's Response to Trustee's Statement of Undisputed Facts, ¶ 4].

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 10-ap-1293, unless otherwise noted.

The Trustee asserts that the Debtor did not owe the Defendant a debt at the time the Debtor made the transfer. [Doc. No. 20, Trustee's Statement of Undisputed Facts, ¶ 5]. With respect to his review of the Debtor's records and whether the Debtor owed the Defendant a debt or received reasonably equivalent value for the transfer, the Trustee stated in his affidavit:

> Schedule F lists a debt to O2HR, LLC in the amount of $90,000. I believed this debt to exist due to notes given to me by Richard Jahn, the Trustee for USIG. In preparation for the above captioned Adversary Proceeding, Art Johnson, a USIG employee, reviewed the books and records of Magellan currently located at the office of Richard Jahn on my behalf.
>
> Mr. Johnson was unable to find any records of a debt owed to O2HR, LLC by the Debtor for the $90,000.00 listed, or any other amount.
>
> Mr. Johnson was unable to find any records of reasonably equivalent value received in exchange for the $273,486.22 transfer, and the Debtor did not plead that reasonably equivalent value was given in its answer.

Trustee Aff., ¶¶ 5-8.

The Defendant disputes the Trustee's assertion that the Debtor did not owe it a debt. The President of O2HR has provided this court with an affidavit regarding the debt owed by the Debtor to the Defendant. The affidavit states in part:

> Beginning in January 2007, O2HR provided services and funding to Magellan . . . and invoiced Magellan for its services and funding which were not paid. As of September 30, 2008, Magellan owed O2HR $92,104.26 as reflected on the Complaint filed in the Circuit Court of the Thirteenth Judicial District in and for Hillsboro County, Florida . . . .
> The funds received from Magellan . . . in the amount of $273,486.22 should have satisfied the debt owed to O2HR, LLC in the amount of $92,104.26.

[Doc. No. 26-1, Affidavit of Brian Henderson ("Henderson Aff."), ¶¶ 3-4]. The Defendant has also provided the court with a copy of the complaint that it alleges it filed in Hillsborough County, Florida ("State Court Complaint"). *See* [Doc. No. 29]. Although the State Court Complaint is not signed and does not indicate a case number or other indicia of filing in the state court, it does indicate that the Defendant raised claims of open account, account stated, and quantum meruit against the Debtor. The State Court Complaint asserts that, from June 1, 2008 to September

30, 2008, the Defendant provided the Debtor with $92,104.26 in payroll processing services and benefits administration and that the Debtor failed to pay for those services. In addition to the requested $92,104.26 in damages, the State Court Complaint sought interest, attorneys' fees, and costs. *See id.* The Defendant has filed two claims with the court totaling $123,204.16 [Bankr. Case No. 09-16965, Claims Nos. 3 and 4]. Thus, the parties dispute whether the Debtor owed the Defendant a debt.

The parties further dispute whether the Debtor was insolvent at the time of the transfer. The Trustee asserts that the Debtor was insolvent at the time it transferred the money to the Defendant. *See* Trustee's Statement of Undisputed Facts, ¶ 6. According to the Trustee, he reviewed the Debtor's bank account statement from Bank of America and determined that "[t]he Debtor did not have any assets at the time of the transfer other than the money in its operating account, approximately $3,700.00." Farinash Aff., ¶ 9. The Trustee further posits that "[a]ccording to the Debtor's schedules, it had liabilities totaling over $1,000,000.00, and only $3,700.00 in assets at the time of the filing only two months after the transfer. The debt existed at the time of the transfer." *Id.* at ¶ 10. The summary judgment record includes the Bank of America operating account records for the Debtor. *See* [Doc. No. 26-2]. These records indicate that on August 11, 2009 the Debtor transferred $273,486.22 to the Defendant. *Id.* at p. 28. Following the transfer, the Debtor had only $4,999 left in the Bank of America account. *Id.* On September 15, 2009 the Debtor maintained only $4,154.01 in the Bank of America account. *Id.* at p. 16. On November 1, 2009, shortly after creditors filed the involuntary petition in bankruptcy, the Bank of America records indicate that the Debtor had only $3,764.11 in the account. *Id.* at p. 10.

The Defendant denies that the Debtor was insolvent at the time of the transfer. *See* Defendant's Response to Trustee's Statement of Undisputed Facts, ¶ 6. It urges that the Trustee bears the burden of proving insolvency and that the Trustee's evidence only indicates

that he reviewed one of the Debtor's bank accounts to determine insolvency, rather than all of the Debtor's available books, records, and other statements of financial affairs. *See* [Doc. No. 26, Defendant's Response in Opposition to the Motion for Summary Judgment, p. 4; Doc. No. 26-2, Exhibit B, pp. 2-3]. However, the Defendant did not provide an example of any of these other books or records to support its contention that the Debtor was solvent.

**II.     Jurisdiction**

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district provide this court with jurisdiction to hear and decide this adversary proceeding. The Trustee's action regarding the avoidance of pre-petition transfers is a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(F), 157(b)(2)(H).

**III.    Standard of Review**

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving

party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

**IV. Analysis**

The Trustee's motion for summary judgment seeks judgment as a matter of law pursuant to 11 U.S.C. § 548.

**A. Avoidance of Transfer Pursuant to 11 U.S.C. § 548**

11 U.S.C. § 548 allows a trustee to:

> avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> . . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). The trustee bears the burden of proving each requisite element by a preponderance of the evidence. *See Lisle v. John Wiley & Sons (In re Wilkinson)*, 2006 WL 2380887, 196 F. App'x 337, 341 (6th Cir. Aug. 12, 2006).

**1. Repayment of a Debt for Less Than Reasonably Equivalent Value**

The statute defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor . . ." 11 U.S.C. § 548(d)(2)(A). 11 U.S.C. § 550

allows a trustee to recover property for the benefit of the estate where a court has avoided transfer of the property pursuant to 11 U.S.C. § 548.  11 U.S.C. § 550.

The Sixth Circuit Bankruptcy Appellate Panel has addressed the meaning of "reasonably equivalent," which is undefined in the Bankruptcy Code.  *See Congrove v. McDonald's Corp. (In re Congrove)*, No. 04-8049, 2005 WL 2089856, 330 B.R. 880, at *3 (B.A.P. 6th Cir. 2005) *aff'd*, 222 F. App'x 450 (6th Cir. 2007).  In *In re Congrove*, the 6th Circuit Bankruptcy Appellate Panel noted that:

> In determining whether value is reasonably equivalent, focus should be placed upon the consideration received by the debtor rather than the value given by the transferee:
>
>> [T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to unsecured creditors.  As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.
>
> "[I]t is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value."

*Id.* (quoting *Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 484 (4th Cir. 1992) and *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993)).  Section 548 defines *value*.  11 U.S.C. § 548(d)(2)(A).  The definition specifically includes satisfaction of an antecedent debt.  *Id.*

In general, where the central issue in dispute is whether a debtor received reasonably equivalent value in exchange for a transfer, the question is one of fact.  *See In re Wilkinson*, 196 F. App'x at 341 (citing *In re Humble*, 19 F. App'x 198, 200 (6th Cir. 2001)); *Webb Mtn, LLC v. Executive Realty Partnership, L.P. (In re Webb Mtn, LLC)*, 420 B.R. 418, 432-33 (Bankr. E.D. Tenn. 2009).  In *In re Wilkinson* the Sixth Circuit further instructed that "[a] court considering this question should first determine whether the debtor received *any* value in the exchange.  If so, the court should determine if the value received was reasonably equivalent."  196 F. App'x at

341 (citing *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Freuhauf Trailer Corp.)*, 444 F.3d 203, 212 (3d Cir. 2006)). Further, "'[i]n assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer.'" *In re Webb Mtn, LLC*, 420 B.R. at 433 (quoting *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999)). Courts may consider fair market value or the elimination of an antecedent debt as factors in this assessment. *See In re Webb Mtn, LLC*, 420 B.R. at 433. The concept of "reasonably equivalent value" need not be "esoteric," but instead "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave. . . .'" *Id.* (quoting *VFB, LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007)).

In this action the Trustee contends that the Debtor did not owe the Defendant a debt. *See* Farinash Aff., ¶ 7. The Trustee further asserts that the Debtor did not receive reasonably equivalent value for the transfer of the $273,486.22. *Id.* at ¶ 8. However, the Defendant has raised genuine issues of material fact regarding whether an antecedent debt existed and whether satisfaction of that debt was at least partial consideration for the transfer. The Defendant has provided the court with the affidavit of its president and a copy of a State Court Complaint which provides more detail about the specifics of the debt. *See* Henderson Aff., ¶ 3; [Doc. No. 29]. In the State Court Complaint the Defendant asserted claims of open account, account stated, and quantum meruit. The State Court Complaint sought $92,104.26 in damages, plus interest, attorneys' fees and costs. *Id.* Although it is not clear when the State Court Complaint was filed from the exhibit provided by the Defendant, the document does indicate a dispute between the Debtor and the Defendant regarding whether the Debtor owed the Defendant sums for services provided. Since that time, the Defendant has filed two proofs of claim for a total claim of $123,204.16, arising from the services and benefits it claims to have

provided. Thus, the court concludes that the Defendant has raised a genuine issue of material fact regarding the existence of a debt and has raised a question regarding whether reasonably equivalent value was provided in exchange for the Debtor's transfer. Based on the dispute of fact between the parties, the court has determined that it will **DENY** the Trustee's motion for summary judgment regarding whether a debt existed and whether the Debtor received reasonably equivalent value for $123,204.16 of the transfer of funds to the Defendant and **GRANT** the Trustee's motion with respect to the remaining amount of the tranfer.

### 2. Evidence Regarding Whether the Debtor Was Insolvent after the Transfer

The Bankruptcy Code defines "insolvent" for entities other than partnerships and municipalities as:

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of –
>
> (i)  property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A). In an earlier *In re Webb Mtn, LLC* decision, the bankruptcy court explained, "[i]nsolvency for the federal causes of action is limited to balance sheet insolvency. 'Insolvency . . . is basically a balance sheet test: that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions.'" *Webb Mtn, LLC v. Executive Realty Partnership, L.P. (In re Webb Mtn, LLC)*, 414 B.R. 308, 355 (Bankr. E.D. Tenn. 2009) (quoting *Silagy v. Gagnon (In re Gabor)*, 280 B.R. 149, 160 (Bankr. N.D. Ohio 2002)). A determination of insolvency is generally a factual question. *See e.g. Foreman Indust., Inc. v. Broadway Sand & Gravel (Matter of Foreman Indust., Inc.)*, 59 B.R. 145, 149 (Bankr. S.D. Ohio 1986).

The Trustee in this case argues that the Debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such

transfer or obligation" pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I). Although a presumption of insolvency exists for 11 U.S.C. § 547, there is no such presumption of insolvency for 11 U.S.C. § 548. *See e.g., Kovacs v. Berger (In re Berger)*, No. 04-8049, 2007 WL 2462646, at *4 (Bankr. N.D. Ohio Aug. 27, 2007).

The evidence presented in the record on summary judgment indicates that the Debtor transferred $273,486.22 to the Defendant on August 11, 2009. [Doc. No. 26-2, p. 28]. This was an involuntary case filed approximately two and one half months later by the trustee in the case of U.S. Insurance Group, LLC ("USIG") also pending before this court. *In re U.S. Insurance Group, LLC,* Case No. 1:09-bk-12487 (Bankr. E.D. Tenn.). In that voluntary petition the USIG trustee asserted a debt owed of $800,000. Mr. Farinash was appointed and filed schedules for the Debtor showing no real or personal property except the checking account. On Schedule F, he listed a debt to USIG for $993,507 and a debt to Bank Direct for $18,350. On November 1, 2009 that bank account had only $3,764.11. *Id.* at p. 9. The bank statements did not show a balance in excess of the scheduled debts on August 11, 2009, or any time thereafter.

In addition to the two debts previously mentioned, the Debtor's Schedule F filed in the main bankruptcy case indicates a total of $1,901,857.00 in claims by unsecured creditors, including a $90,000 claim by Defendant and an $800,000 claim that is a subject of dispute. [Bankr. Case No. 1:09-16965, Doc. No. 24]. Even removing the Defendant's claim and the disputed claim, the Debtor had more than one million dollars worth of unsecured claims filed against it. *See id.*

In response, the Defendant asserts that the Trustee has the burden of proving insolvency. However, the Defendant has not come forward with any additional evidence indicating that a genuine issue of material fact exists regarding whether the Debtor was insolvent at the time of the transfer. It asserts that the Trustee has not demonstrated that he combed through all of the possible financial records of the Debtor to determine if other assets

were available to the Debtor. However, the Trustee testified in his affidavit that "I have reviewed or have had someone review on my behalf, the books and records of the Debtor." Farinash Aff., ¶ 2. Thus, there is evidence in the record that the Trustee has reviewed all of the available financial records of the Debtor.

Although the court must view the record in the light most favorable to the non-moving party for purposes of summary judgment– the Defendant in this case– the Defendant must come forward with something more than mere speculation regarding whether a genuine issue of fact exists. *See e.g., Settles v. Internal Revenue Serv. (In re Settles)*, __ B.R. __, 2011 WL 2457939, at *20 (Bankr. E.D. Tenn. 2011) (citing *Hahn v. Sargent*, 523 F.2d 461, 467 (1st Cir. 1975); *Dias v. Nationwide Life Ins. Co.*, 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010)). In this case, although the court does not have reams of financial records pertaining to the Debtor, it does have banking records indicating that the Debtor had only $3,764.11 in its bank account shortly after the involuntary bankruptcy petition was filed. In addition, it has the Debtor's Schedule F indicating that the Debtor had over one million dollars in unsecured debt. *See* [Bankr. Case No. 09-16965, Doc. No. 24]. It also has the involuntary petition on which the order for relief was granted showing a debt of $800,000. The court also has evidence from the Trustee himself that he reviewed or supervised the review of the financial records pertaining to the Debtor. *See* Farinash Aff., ¶ 2. The Defendant has provided nothing more than speculation regarding whether evidence exists of more than one million dollars in assets that the Debtor would need to satisfy a "balance sheet" test of solvency following the transfer at issue here.

> The newly revised Fed. R. Civ. P. 56 states in relevant part:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence

to support the fact.

Fed. R. Civ. P. 56(c)(1). Even though the Trustee bears the burden of proving insolvency in this case, the record reveals that evidence of insolvency exists. Further, to demonstrate solvency, there would need to be over one million dollars in assets that the Debtor possessed at the time of the transfer. The statement of financial affairs discloses no other asset transfers. [Bankr. Case No. 09-16965, Doc. No. 19, Statement of Financial Affairs, pp. 2-5]. The Defendant presents no evidence that such assets exist or that the Trustee's calculation of claims is overstated. To defeat a motion for summary judgment, the Defendant must do more than speculate regarding the existence of other financial records that might demonstrate solvency. *See e.g.*, *In re Brown*, 287 B.R. 676, 681 (E.D. Mich. 2001) (noting that the "non-moving party bears the burden of designating specific facts showing there is a genuine issue for trial"). Based on the Defendant's failure to present any evidence indicating that the Debtor had more than one million dollars in additional assets that would outweigh its debts or that the debts on Schedule F are overstated, the court finds that the Debtor was insolvent at the time of the transfer. The court concludes that it will **GRANT** the Trustee's motion for summary judgment regarding the question of the Debtor's insolvency.

**V.    Conclusion**

For the reasons explained *supra*, the Trustee's motion will be **DENIED IN PART** and **GRANTED IN PART**. The court will **DENY** the motion for summary judgment regarding the question of whether the Debtor owed the Defendant a debt and whether the Debtor received reasonably equivalent value for the transfer of funds to the Defendant up to the amount of the debt asserted. The court will **GRANT** the motion for summary judgment for the Trustee on the amount of the transfer in excess of the debt in dispute and on the issue of whether the Debtor was insolvent.

A separate order will enter.